**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **IN RE NIASPAN ANTITRUST LITIGATION** | Case No. ____________<br>Related to Case No. 13-md-02460 (E.D.Pa.) |

**MEMORANDUM OF NON-PARTY LUPIN PHARMACEUTICALS, INC. IN SUPPORT OF ITS MOTION TO QUASH**

## I. INTRODUCTION

Pursuant to Rule 45(d) of the Federal Rules of Civil Procedure, Lupin Pharmaceuticals, Inc. ("Lupin"), a non-party to the action styled *In re Niaspan Antitrust Litigation*, Civ. A. No. 13-md-02460 and currently pending in the United States District Court for the Eastern District of Pennsylvania, hereby moves to quash a subpoena[2] directed to it by the Direct Purchaser Plaintiffs ("Plaintiffs"), dated January 7, 2015 ("the Subpoena").[3] The action consolidates a number of antitrust class actions filed in district courts around the country. In their Amended Consolidated Complaint filed on January 15, 2014, Plaintiffs allege that brand manufacturer Kos Pharmaceuticals, Inc. ("Kos") entered into anticompetitive settlement agreements concerning generic Niaspan, first with generic manufacturer Barr Pharmaceuticals, Inc. ("Barr") and then with generic manufacturer Ranbaxy. The direct-purchaser and indirect-purchaser plaintiffs allege violations of numerous federal and state laws including violations of Sections 1 and 2 of the Sherman Act, state antitrust statutes, state consumer protection statutes, as well as liability under a theory of unjust enrichment.

[3] A true and correct copy of the Subpoena is attached hereto as Exhibit A.

Lupin is not a party to the action. Plaintiffs served the Subpoena on Lupin, as a third-party, in Baltimore, Maryland.[4] Pursuant to Federal Rules of Civil Procedure 45(d)(3)(A) & (B), Lupin is asking this Court to protect it as a non-party from the undue burden and expense that will result from this overly broad Subpoena.[5] As detailed below, the scope of the Subpoena is profoundly sweeping and unreasonably overbroad, and complying with it would be unduly burdensome to Lupin. Virtually all of the documents the Subpoena seeks are irrelevant to any issue in the action, and all of them are highly commercially sensitive. What is more, many of the documents are protected by attorney-client and work product privileges.

The requests in the Subpoena would be overly broad and subject to a protective order if Lupin were a party to the litigation, but Lupin is not a party. Thus, the Subpoena, on its face, does not comply with Plaintiffs' obligations under Rule 45 to seek non-party discovery that is not unduly burdensome. Despite Lupin's counsel's repeated efforts to work with Plaintiffs' counsel to narrow the Subpoena's intrusive and improper requests, Plaintiffs have refused to limit or modify the Subpoena in any meaningful way.

Because the Subpoena unnecessarily and unduly burdens a non-party, Lupin respectfully requests that the Court grant its motion to quash the Subpoena.[6]

---

[4] Depending on how one interprets Rule 45(c) of the Federal Rules of Civil Procedure, service may have been inadequate. Lupin's headquarters in Baltimore is more than a 100 mile drive to the Eastern District of Philadelphia. On the other hand, a straight line drawn between the two is about 90 miles long. Although it is unclear whether this Court would apply the "straight line" or "shortest route of public travel" test to measure the distance, Lupin is not contesting the adequacy of service.

[5] Rule 45(c)(2)(A) provides that the court for the district where compliance is required is one "within 100 miles of where the person resides, is employed, or regularly transaction business in person." Rule 45(d)(3) empowers the court for the district where compliance is required to quash a subpoena that requires disclosure of privileged or confidential information. The Subpoena did not argue for a court where compliance is required, and this Court is only four blocks from Lupin's headquarters.

[6] If the Court determines that the Subpoena should not be quashed in its entirety, Lupin respectfully requests the opportunity to submit a concise briefing on the need for a protective order Pursuant to Fed. R. Civ. P 26(c).

## II. FACTUAL BACKGROUND

On January 8, 2015, Plaintiffs served the Subpoena on non-party Lupin, ostensibly because Lupin entered into a settlement agreement with Kos concerning generic Niaspan. The Subpoena originally set a compliance date of January 30, 2015. Despite the breadth of the Subpoena and despite Lupin's request to narrow the scope of the Subpoena, Plaintiffs issued an additional discovery request to Lupin on February 19, 2015, seeking the company's highly confidential sales data related to its generic version of Niaspan.[7]

Troubled by the overly broad and improperly invasive scope of the Subpoena, Lupin's counsel has attempted multiple times to work with Plaintiffs' counsel to limit the scope of the Subpoena. On January 27, 2015, Lupin's counsel sent Plaintiffs' counsel a letter objecting to the subject and scope of the Subpoena.[8] Plaintiffs summarily rejected Lupin's objections and, in March 2015, counsel for Lupin and Plaintiffs conferred about the scope of the Subpoena via telephone. Despite paying lip service to a "spirit of cooperation," Plaintiffs refused to limit their requests in any way and rejected all of Lupin's arguments about the undue burden. On April 3, 2015, Lupin's counsel again raised concerns about the scope of the Subpoena, but to no avail.[9]

In a last-ditch effort to reach a compromise and avoid the time and expense associated with motion practice, Lupin's counsel requested another conference with Plaintiffs' counsel and the parties agreed to meet and confer April 22, 2015.[10]

---

[7] Although Plaintiffs have not yet formally served Lupin with a subpoena for its sales data, Plaintiffs have indicated they will serve a formal subpoena if necessary. A true and accurate copy of Plaintiffs' additional requests, which have been labeled by Plaintiffs as Attachment "C", is attached hereto as Exhibit B.

[8] Attached here to as Exhibit C is a true and correct copy of a letter dated January 27, 2015 from Lupin's counsel to Plaintiffs' counsel.

[9] Attached hereto as Exhibit D is a true and correct copy of an email from Leiv Blad, counsel for Lupin, to John Fitzpatrick, counsel for Plaintiffs, and others dated April 3, 2015.

[10] Attached hereto as Exhibit E is a true and correct copy of an email chain between Leiv Blad, counsel for Lupin, to John Fitzpatrick, counsel for Plaintiffs, and others dated April 15, 2015.

During that meet and confer on April 22, 2015, Lupin's counsel offered to produce documents showings its sales of Niaspan since Lupin first began selling the drug. Lupin's offer was conditioned on Plaintiffs' counsel relieving Lupin from the obligation of responding to the remainder of the Subpoena. Also during that same conference, Plaintiffs' counsel specifically requested that Lupin produce its settlement agreement with Kos. Tellingly, when asked why Plaintiffs could not obtain that document from Kos, a named party in the litigation, Plaintiffs' counsel stated that their discovery requests to Kos for that information remained outstanding.

Following the conference on April 22, Plaintiffs' counsel sent Lupin's counsel a letter, indicating that Plaintiffs believed four categories of information sought in the Subpoena were essential.[11] However, far from narrowing the improperly broad and invasive scope of the Subpoena, those four categories encompass the entirety of the Subpoena, and are either obtainable from others in the litigation, irrelevant, privileged and/or confidential, or would place an undue burden on Lupin. Thus, Lupin has exhausted the possibility of meaningful cooperation with Plaintiffs' counsel on the Subpoena, and now seeks relief from this Court.

## III. LEGAL ARGUMENT

This Court has broad, inherent power "to exercise appropriate control over the discovery process." *Herbert v. Lando,* 441 U.S. 153, 177 (1979). While the scope of discovery under the Federal Rules is "unquestionably broad, [the] right is not unlimited and may be circumscribed." *In Re Domestic Drywall Antitrust Litig.*, 300 F.R.D.234, 238 (E.D. Pa. 2014) (internal citation omitted). It is axiomatic that discovery requests may, for good cause, be limited to protect an entity from which discovery is sought from embarrassment, oppression, or undue burden or expense. *See generally,* Fed. R. Civ. P. 26 (c)(1).

---

[11] Attached hereto as Exhibit F is a true and correct copy of a letter dated April 22, 2015 from Plaintiffs' counsel to Lupin's counsel.

### A. Non-Parties Are Entitled to Greater Discovery Protections Than Parties.

A non-party may seek the court's protection from discovery via the overlapping and interrelated provisions of both Rule 26 and 45 of the Federal Rules of Civil Procedure. *In Re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-0620, 2012 WL 298480, at *3 (E.D. Pa. Jan. 31, 2012). "A court should be 'particularly sensitive to weighing the probative value of the information sought against the burden of production on [a] nonparty.'" *In Re Domestic Drywall Antitrust Litig.*, 300 F.R.D. at 239 (internal citation omitted); *Echostar Commc'ns Corp. v. News Corp.*, 180 F.R.D. 391, 394 (D. Col. 1998) (non-party status weighs against disclosure).

### B. The Subpoena Must Be Quashed Because it Seeks Documents That Are Not Relevant as well as Confidential and Privileged Information, Compliance With it Would Be Unduly Burdensome, and Plaintiffs Have No Substantial Need For The Requested Information.

#### 1. Standard for a Motion to Quash.

Pursuant to Fed. R. Civ. P. 45(d)(3)(A), this Court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter . . . or if the subpoena subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii-iv). Under Fed. R. Civ. P. 45(d)(3)(B), this Court "may, on motion, quash or modify" a subpoena that requires the disclosure of "a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i).

In assessing a motion to quash, the moving party must first establish that the information is protected under Rule 45(d)(3)(A) or (B). If the information sought is so protected, "[t]he burden then shifts to the requesting party to demonstrate the information's relevance and necessity." *Innovative Therapies, Inc. v. Meents*, 302 F.R.D. 364, 380 (D.Md. 2014). "If the information is relevant and necessary, the court must balance the requesting party's need for disclosure against the resisting party's potential for injury." *Id.*

Lupin satisfies this test to warrant quashing the Subpoena. First, compliance with the Subpoena would require Lupin to compromise its highly confidential and privileged information and would subject Lupin to undue burden. The documents sought in the Subpoena constitute proprietary information of Lupin that would be extremely valuable to Lupin's direct competitors, including defendants in the underlying litigation. Furthermore, the Subpoena expressly seeks documents protected by the attorney-client privilege and attorney work product doctrine. Compliance with the Subpoena would cause Lupin clearly defined and serious injury by disclosing – and thereby damaging – its most sensitive information, and imposing significant financial and time restraints on Lupin.

Second, as detailed below, Plaintiffs cannot demonstrate that the information sought is relevant or necessary to any claim or defense. Lupin is not a party to underlying antitrust litigation and the relevance of any information in Lupin's possession is therefore dubious at best. Plaintiffs certainly cannot establish a significant need for non-party Lupin's confidential and proprietary information.

Finally, even if the documents were somehow relevant, the probative value of any information Plaintiffs could get from Lupin is far outweighed by the significant burden production of such documents would impose on Lupin. Accordingly, Lupin's Motion should be granted and the Subpoena should be quashed.

### 2. The Documents Sought in the Subpoena Are Not Relevant to the Underlying Litigation.

Virtually all of the information sought from Lupin is irrelevant to Plaintiffs' antitrust claims. The only Lupin documents that conceivably could be relevant to Plaintiffs' claims are those that show the prices Lupin charged for generic Niaspan after it entered the market. This information is relevant to Plaintiffs' allegations that generic entry would have lowered the price

charged to direct and indirect purchasers. During the meet and confer on April 22, 2015 between Lupin's and Plaintiffs' counsel, Lupin offered to produce documents showing its sales of Niaspan,[12] but Plaintiffs' counsel refused to accept this accommodation.

The requests are so broad and unfocused that they would require Lupin to produce every document that has anything whatsoever to do with Niaspan (and many more than that). The requests seek, for example, communications with the FDA about Niaspan no matter what the issue (Request No. 2), every agreement relating to generic Niaspan, including supply agreements, manufacturing agreements, and employment agreements (Request No. 4), documents discussing potential co-promotion and co-manufacturing agreements (Request No. 8), agendas and minutes of product development team meetings regarding "the identification, development, approval, formulation, scale-up, validation, manufacturing, and marketing of any Niaspan products" (Request No. 9), organizational charts, personnel directories, telephone directories, and e-mail user lists (Request No. 10), documents concerning other companies' Niaspan ANDAs (Request No. 11), communications between Lupin and any other "suspected" ANDA filers regarding generic Niaspan (Request No. 12), and documents from any litigation against Lupin filed by the defendants, regardless of the subject of the litigation (Request No. 13). *See* Exhibit A.

These requests seek documents that cannot possibly be relevant to any issue in the litigation. To the extent they sweep in even a small subset of relevant documents, the probative value of those documents is vastly outweighed by the burden on Lupin.

---

[12] By offering to produce a subset of the requested information in an effort to compromise and avoid resorting to motion practice, Lupin did not (and does not) concede that the information requested in the Subpoena is relevant to the underlying litigation or not burdensome. Lupin maintains that the Subpoena should be quashed in its entirety.

### 3. The Subpoena Must Be Quashed Because the Information Sought Is Privileged and Confidential, and Compliance With it Would Cause Undue Burden and Clearly Defined and Serious Injury to Lupin.

Even if the documents requested in the Subpoena were somehow deemed relevant, the Subpoena still should be quashed because virtually every request seeks information that is confidential and/or proprietary to Lupin. Without limitation, the Subpoena requests highly sensitive, confidential and proprietary business information, and information that is protected by the attorney-client privilege and attorney work product doctrine.

#### a. The Subpoena seeks highly confidential and commercially sensitive material.

The Subpoena seeks Lupin's highly confidential, sensitive and proprietary information, such as documents related to: Lupin's survey of the market and business projections for its generic version of Niaspan (Request 1); Lupin's analyses of its settlement agreements, supply and distribution agreements, and intellectual property concerning Niaspan or its generic versions (Request 4); Lupin's analyses of the forecast and financial impact of its agreement with Abbott (Request 6); Lupin's "analyses regarding any options or plans [Lupin] considered or implemented for co-promoting, or participating in the manufacturing of Niaspan or generic Niaspan" (Request 8); Lupin's "product identification teams/committees, product development teams/committees, launch teams/committees," " analyses, predictions or assessments of [when to launch] Generic Niaspan, including but not limited to, when any patent related lawsuits would resolve, the possibility of launching Generic Niaspan 'at risk', and the identification, development, approval, formulation, scale-up, validation, manufacturing, and marketing of any Niaspan products" (Request 9); Lupin's "sales data for generic Niaspan . . . at the transaction level" (Second Request 1). *See* Exhibits A & B.

Compliance with the Subpoena would require Lupin to reveal – to its direct competitors – some of its most sensitive and confidential business information. Producing such proprietary and commercially classified information would provide Lupin's competitors with an unfair advantage that they would not otherwise have had, but for the abusive non-party discovery requests propounded by Plaintiffs.

In correspondence with Lupin's counsel, Plaintiffs' counsel suggested that their protective order in the underlying litigation mitigates Lupin's confidentiality concerns. However, the mere availability of a protective order may not be enough to overcome the confidentiality concerns of a non-party seeking to quash a subpoena. In *In Re ANC Rental Corp.*, for example, the court quashed a subpoena that sought the confidential financial information of a non-party rental car company. *In Re ANC Rental Corp.*, No. MISC. 02-148, 2002 WL 34729302 (E.D. Pa. June 20, 2002). The court found that the rental car company's confidentiality concerns were justified, reasoning that, as a non-party, the rental car company would not be present at all proceedings, its interest would be subordinate to the parties in the litigation, and plaintiffs would have no real incentive to protect the rental car company's information from a direct competitor. *See id.* at *2; *see also Litton Indus., Inc. v. Chesapeake & Ohio Ry. Co.*, 129 F.R.D. 528, 531 (E.D. Wis. 1990) ("There is a constant danger inherent in disclosure of confidential information pursuant to a protective order. Therefore, the party requesting disclosure must make a strong showing of need, especially when confidential information from a non-party is sought."). This analysis has been applied in the antitrust context, to grant a motion to quash a subpoena to a non-party based, in part, on the concern of producing trade secrets to a direct competitor. *See In Re Vitamins Antitrust Litig.*, 267 F. Supp. 2d. 738, 742 (S.D. Ohio 2003).

Here, as in *In Re ANC*, Lupin will not be present at every hearing in the underlying antitrust matter, its interests will always be subordinate to those of the parties, and neither Plaintiffs nor Defendants in the underlying litigation have any real incentive to protect Lupin's confidential information. Thus, the parties' protective order is insufficient to safeguard Lupin's documents. Lupin's commercially sensitive and proprietary business information should be protected and not disclosed to anyone, let alone its direct competitors.

**b. The Subpoena seeks information protected by the attorney-client privilege and attorney work product doctrine.**

Brazenly and blatantly calling for attorney-client privileged documents and attorney work product, the Subpoena seeks Lupin's documents "***including, but not limited to Communications with counsel (both in-house and outside)***" concerning previous litigations involving Lupin, and the "(a) perceived, claimed or actual strengths and weaknesses of the patent claims or defenses of any party; (b) assessments and/or evaluations regarding which party would prevail; (c) Your investigation of any Paragraph IV certification made with respect to Niaspan Patents[;] your decision to counterclaim[;] the reasons for settling[;] Lupin's decision to adopt Barr's expert reports" (Request 3); Lupin's "negotiation, the rationale for agreeing to" a settlement agreement in Lupin's litigation with Abbott" (Request 6); and "the actual or potential costs of [Lupin's litigation with Abbott], and any projections or analyses of any litigation costs avoided by entering into any agreement" to settle that case (Request 7). *See* Exhibit A (emphasis added).

These requests fly in the face of Federal Rule of Civil Procedure 26(b)(1), which states, "Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any *non-privileged matter* that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1) (emphasis added). "The attorney-client privilege is the oldest confidential communications privilege known to the common law. It is therefore not only an

interest long recognized by society, but also one deemed worthy of maximum legal protection." *Haines v. Liggett Group, Inc.*, 975 F. 2d 81, 89-90 (3d Cir. 1992). Plaintiffs shamelessly disregard the Federal Rules and Lupin's rights thereunder. Plaintiffs cannot point to any action by Lupin – real or imagined – that would indicate that Lupin (or its counsel) somehow has waived the protections of the attorney-client privilege or work product doctrine, such that requesting such sacred information would be appropriate.

This Court should not permit Plaintiffs to seek facially privileged information of a non-party.

**c. Compliance with the Subpoena would impose an undue burden on Lupin.**

In determining whether a subpoena imposes an undue burden, such that the subpoena must be quashed, the court should consider: (1) the relevance of the information requested, (2) the need of the party for the documents, (3) the breadth of the documents requested, (4) the time period covered by the request, (5) the particularity with which the party describes the requested documents, and (6) the burden imposed. *See In Re Domestic Drywall Antitrust Litigation*, 300 at 252. Here, consideration of these factors compels the conclusion that compliance with the Subpoena would impose an undue burden on Lupin, and it should be quashed.

First, as discussed above, Plaintiffs have failed to demonstrate that the information requested by the Subpoena is relevant to their antitrust litigation. *See infra* Section III.B 2. Second, Plaintiffs also have failed to demonstrate a need for the highly confidential and privileged documents requested in the Subpoena. *See infra* Section III.B.3.

As to the third and fifth factors, Plaintiffs' requests are extremely overbroad, and Plaintiffs have refused to tailor them or be more particularized. Plaintiffs' requests would require Lupin to produce virtually every single document in its possession, custody, or control

relating to Niaspan, and virtually every file outlining Lupin's litigation philosophy. For many requests, Plaintiffs have refused to narrow the request to seek "documents sufficient to show," instead of "all documents and communications." *See* Exhibit A, Requests 3, 7. Similarly, rather than asking Lupin to identify employees with certain responsibilities, Plaintiffs demand production of all "[o]rganization charts, personnel directories, and electronic mail users and address lists regarding [those persons]." *Id.*, Request 10.

Fourth, none of the requests in the Subpoena are limited to any particular period of time. Thus, to comply with the terms of the Subpoena, Lupin will be required to search for and produce documents that could span a decade.

Finally, concerning the sixth factor, compliance with the Subpoena would pose a significant financial and time expense to Lupin, because it would require Lupin to search through potentially thousands of documents, some of which may not be readily accessible. Furthermore, since the Subpoena explicitly requests information covered by the attorney-client privilege and work-product doctrine, Lupin will be required to spend a considerable amount of time and energy developing a substantial privilege log for information that is virtually never discoverable.

The extraordinary burden to Lupin of complying with the Subpoena is evident. Consistent with Fed. R. Civ. P. 45(d)(iv), this Court should exercise its inherent powers to control the discovery process, and quash the Subpoena.

**d. Compliance with the Subpoena would cause clearly defined and serious injury to Lupin.**

In order for an injury to be clearly defined and serious, Lupin must present more than just "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasoning[.]" *See generally, Memory Bowl v. N. Pointe Ins. Co.*, 280 F.R.D. 181, 185 (D.N.J. 2012). Though few cases articulate what a "clearly defined and serious injury" is, at least one court (in the

context of issuing a protective order) has found that "disclosure to employees of . . . a nonparty competitors' sales and marketing plans, financial forecasts, margin, pricing, cost and customer information, etc. would obviously constitute a clearly defined and serious injury." *United States v. Dentsply Int'l, Inc.*, 187 F.R.D. 152, 159 (D. Del. 1999).

Lupin has demonstrated particularized concern about the confidentiality of its most sensitive commercial information, Plaintiffs' unjustified intrusion into Lupin's communications protected by the inviolate attorney client privilege and the attorney work product doctrine, and significant expense associated with identifying and producing marginally relevant documents for an undefined time period. These substantiated concerns constitute a clearly defined and serious injury and, therefore, the Subpoena should be quashed.

**4. Any Purported Need for the Requested Documents Does Not Outweigh the Burden and Harm that Compliance With the Subpoena Would Impose on Lupin.**

Since Lupin has clearly demonstrated that it will face a significant risk of harm if it is required to comply with the terms of the Subpoena, under Rule 45, the burden shifts to Plaintiffs to show that they have a substantial need for the requested materials that cannot otherwise be met without undue hardship. Plaintiffs cannot make this showing.

As discussed above, the requested documents are not relevant to the underlying litigation. *See infra* Section III.B.2. Plaintiffs may claim that, to pursue their antitrust claims, they will need an accurate picture of the market for Niaspan both before, and after, the purportedly anti-competitive settlement agreements executed by Barr and Kos. However, if this were true, this purported need could be satisfied easily without undue hardship to Lupin, as Plaintiffs could obtain such information from Defendants named in the action, or through expert testimony. In fact, Plaintiffs' counsel readily admitted during the April 22, 2015 conference that Plaintiffs had

outstanding requests for information related to Lupin's settlement agreements from Kos, a named party in the litigation. Further, Plaintiffs have yet to identify to Lupin's counsel – and indeed, will not be able to offer to this Court – any legitimate basis, let alone a substantial need, to seek Lupin's communications with its in-house and outside attorneys.

Given that the vast majority of the information requested is highly confidential, sensitive and privileged to Lupin, and that the information is marginally relevant – at best – to Plaintiffs' antitrust litigation, Plaintiffs cannot demonstrate a substantial need for the requested information.[13] Accordingly, the Subpoena should be quashed.

## IV. CONCLUSION

For the reasons set forth above, non-party Lupin respectfully requests that this Court grant its Motion to Quash the January 7, 2015 Subpoena.[14]

[13] Even if the Court were to find that Plaintiffs have a significant need for some of the requested materials sought by the Subpoena, Plaintiffs would have to take measures to ensure that Lupin will be reasonably compensated. *See* Fed. R. Civ. P. 45(d)(3)(C).

[14] Should the court deny Lupin's motion to quash the subpoena, Lupin respectfully requests the opportunity to submit a concise briefing on the need for a protective order, and on the important issue of cost-shifting. *See Linder v. Calero-Portocarrero*, 251 F. 3d 178, 182 (D.C. Cir. 2001) (stating a district court "must protect [a] non-party by requiring the party seeking discovery to bear at least enough of the expense to render the remainder non-significant."). In determining whether to issue a protective order, the United States District Court for the Eastern District of Pennsylvania looks at three factors: (1) whether the information sought to be protected constitutes a trade secret or other confidential or commercial information; (2) whether the disclosure of the information would cause cognizable harm to the disclosing party; (3) whether the party seeking to protect the information has shown "good cause" to warrant a protective order. *See Zenith Radio Corp. v. Matsushita Elec. Indus.*, 529 F. Supp. 866, 889 (E.D. Pa. 1981). Lupin has demonstrated that the requested information sought is highly confidential and commercially sensitive, compliance with the Subpoena would cause undue burden and injury to Lupin, and that it has good cause for protection.

Respectfully submitted,

DATED: April 28, 2015

Anthony R. Van Vuren (Bar. No. 18760)
Morgan, Lewis & Bockius LLP
2020 K Street, NW
Washington, DC 20006-1806
(t) 202.373.6867
(f) 202.373.6001
anthony.vanvuren@morganlewis.com

Leiv H. Blad
Morgan, Lewis & Bockius LLP
2020 K Street, NW
Washington, DC 20006-1806
(t) 202.373.6564
(f) 202.373.6001
leiv.blad@morganlewis.com

*Attorneys for Non-Party*
*Lupin Pharmaceuticals, Inc.*